IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| XM SATELLITE RADIO INC.<br>1500 Eckington Place, NE<br>Washington, DC 20002<br><br>    Plaintiff,<br><br>  v.<br><br>GLOBAL COMP NORTHEAST, INC.,<br>1111 Route 110, Suite 207<br>Farmingdale, NY 11735<br>Serve: Business Filings Incorporated<br>   (Registered Agent)<br>   187 Wolf Road, Suite 101<br>   Albany, NY 12205<br><br>    Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff XM Satellite Radio Inc. ("XM"), by counsel and for its Complaint, states as follows:

### NATURE OF THE CASE

1. This is an action for Defendant Global Comp Northeast, Inc.'s ("Global") breach of an agreement for the sale of component parts, MAX1684EEE's ("MAX1684 Chips") and MAX2470EUT-T's ("MAX2470 Chips") (collectively, "Chips") needed for the production of electronic goods on behalf of Plaintiff. Despite XM's prepayment for a specified number of Chips, Defendant only provided a small portion of the total number of Chips ordered. Further, the MAX1684 Chips that were provided were defective and unusable, and were thus returned to Defendant. XM's repeated requests for refund of the amount paid for the Chips that were never

delivered, as well as for the MAX1684 Chips that were returned by XM due to their defects and their lack of labeling, have gone unanswered. Plaintiff thus seeks damages for breach of contract, unjust enrichment, breach of the obligation of good faith and fair dealing, and breach of the implied warranty of merchantability.

## PARTIES

2.  Plaintiff XM Satellite Radio Inc. is a corporation organized under the laws of Delaware with its principal place of business at 1500 Eckington Place, NE, Washington, DC, 20002.

3.  On information and belief, Defendant Global Comp Northeast, Inc., is a corporation organized under New York law, with its principal place of business at 1111 Route 110, Suite 207, Farmingdale, New York, 11735.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the value of $75,000, exclusive of interests and costs.

5.  This Court has personal jurisdiction over Defendant based on D.C. Code § 13-423(a)(1) due to Defendant's transaction of business in the District of Columbia and (pursuant to D.C. Code § 13-423(b)) the fact that this claim for relief arises directly therefrom.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because the Defendant "resides" in the District of Columbia, pursuant to the 28 U.S.C. § 1391(c) definition that a defendant resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Venue is also proper under 28 U.S.C. § 1391(a)(2) since a

substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## FACTS

### The Agreements

7. Pursuant to communications mainly via e-mail between employees of XM located in the District of Columbia and employees and/or agents of Global Comp Northeast, Inc., Plaintiff XM and Defendant Global entered into agreements whereby Defendant was to provide XM with a number of Chips to be used in the production of electronics.

8. Pursuant to the agreements, Defendant committed to ship a total of 49,600 MAX1684 Chips and a total of 17,265 MAX2470 Chips to a factory operated on behalf of XM and various manufacturers of devices compatible with XM's satellite digital audio radio system and located in Malaysia.

9. By wire transfers of funds to the Defendant in an amount totaling $207,624.15, XM in good faith provided payment for the goods to Defendant.

### Defendant Global's Breach of the Agreements

10. Despite Plaintiff's payment of over $200,000 to Defendant for the provision of the Chips, Plaintiff received only 5,000 MAX1684 Chips and a total of 785 MAX2470 Chips.[1]

11. In addition to shipping only 5,000 of the 49,600 MAX1684 Chips agreed upon, the 5,000 MAX1684 Chips that were shipped were unusable due to technical deficiencies. Upon their arrival, the 5,000 MAX1684 Chips were discovered to have voltage differences and bent leads. Further, they lacked the labels and part numbers that Plaintiff required that they have and that are a well-accepted industry standard.

---

[1] While, upon information and belief, Defendant shipped 3,265 MAX2470 Chips, only 785 MAX2470 Chips were properly delivered to the factory.

12. XM promptly notified Defendant of the deficiencies in the MAX1684 Chips, complied with Defendant's request that XM provide it with a "test report" reflecting such deficiencies, and returned the defective MAX1684 Chips.

13. XM informed the Defendant in writing that if the latter could not provide the Chips for which XM had contracted, assembly lines in the factory would have to be shut down due to the lack of Chips. Upon Defendant's continuing failure to provide the Chips, affected assembly lines were shut down and the production of Plaintiff's products was stopped.

14. Among other communications, by correspondence dated June 25, 2004, September 30, 2004, and December 22, 2004, XM further advised Defendant of its wish to recoup its payments to Defendant.

15. To date, Defendant has neither returned Plaintiff's payment for the faulty (returned) Chips or for the undelivered Chips that constituted the balance of Plaintiff's order from Global, nor has it provided Chips consistent with XM's order.

## COUNT I – BREACH OF CONTRACT

16. XM adopts and incorporates by reference each of the allegations in Paragraphs 1 through 15 above as though fully set forth herein.

17. Defendant Global materially breached the agreements by failing to deliver the total number of functional Chips required under the agreements.

18. While delivery of a portion of the MAX1684 Chips was executed (5,000 out of a total of 49,600), this portion of MAX1684 Chips was unusable. Global materially breached the agreements by failing to provide any functional MAX1684 Chips in good condition and with appropriate labeling and part numbers affixed.

19.     While delivery of a portion of the MAX2470 Chips was executed (785 out of a total of 17,265), Global materially breached the agreements by failing to provide the balance of MAX2470 Chips.

20.     Global's material breaches of the agreements have caused injury to XM, and entitle XM to recover damages in excess of $207,624.15, plus interest from the date of payment, minus the value of 785 MAX2470 Chips received by the factory.

## COUNT II – UNJUST ENRICHMENT

21.     XM adopts and incorporates by reference each of the allegations in Paragraphs 1 through 15 above as though fully set forth herein.

22.     By receiving and withholding pre-payment for Chips that were never received by Plaintiff or were received but were defective and were returned due to such defects, XM conferred a valuable and substantial benefit upon Global, which Global retains to this day.

23.     Global knew of and/or appreciated the value of the payments provided to it and knew that Plaintiff did not receive the benefit of the agreement for which Plaintiff provided these prepayments (i.e., the complete and timely delivery of non-deficient Chips).

24.     XM is therefore entitled to have the value of its payments returned to it, less the value of the 785 MAX2470 Chips actually received by the factory. Absent such relief, Global will have been unjustly enriched at XM's substantial monetary expense.

## COUNT III – OBLIGATION OF GOOD FAITH
### (D.C. Code § 28:1-203)

25.     XM adopts and incorporates by reference each of the allegations in Paragraphs 1 through 15 above as though fully set forth herein.

26. Pursuant to D.C. Code § 28:1-203, every contract or duty (such as the agreements involved herein) that falls under the District of Columbia's Uniform Commercial Code "imposes an obligation of good faith in its performance or enforcement."

27. Despite XM's full performance as required under the agreements, Global has failed to perform as required under the same agreements by delivering only a small portion of the Chips required, and by delivering deficient, unusable Chips.

28. Global has also failed to return the payments that XM made in good faith to Global under the agreements, less the value of the 785 MAX2470 Chips received by the factory.

29. Global's conduct in this regard violates D.C. Code § 28:1-203 and evinces a breach of the obligation of good faith. As a result of this breach, XM has suffered and will suffer actual damages.

## COUNT IV – WARRANTY OF MERCHANTABILITY
### (D.C. Code § 28:2-314)

30. XM adopts and incorporates by reference each of the allegations in Paragraphs 1 through 15 above as though fully set forth herein.

31. Pursuant to D.C. Code § 28:2-314, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

32. The seller, Defendant Global Comp Northeast, Inc., is a merchant with respect to the Chips sold.

33. With the exception of the 785 MAX2470 Chips received by the factory, the goods provided by Global to XM are unmerchantable because, *inter alia*, they do not pass without

objection in the trade under the contract description and because they are not fit for the ordinary purposes for which the goods are used.

34. As a result of this breach of the warranty of merchantability, XM has suffered and will suffer actual damages.

## **PRAYER FOR RELIEF**

Wherefore, XM respectfully requests that this Court award the following relief against Global:

A. Entry of judgment in its favor against Global for breach of contract in an amount proved at trial;

B. Entry of judgment in its favor against Global for unjust enrichment in the amount of $207,624.15, less the value of 785 MAX2470 Chips;

C. Entry of judgment in its favor against Global for breach of the obligation of good faith pursuant to D.C. Code § 28:1-203;

D. Entry of judgment in its favor against Global for breach of the warranty of merchantability pursuant to D.C. Code § 28:2-314;

E. Reasonable attorneys' fees and costs;

F. Interest on all of the amounts enumerated above; and

G. Such other appropriate relief as this Court deems just and proper in law or in equity.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims raised in the Complaint that are so triable.

DATED: February 2, 2006

Respectfully submitted,

_____
Deborah B. Baum (D.C. Bar No. 393019)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007

Counsel for XM Satellite Radio Inc.